**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**SEUNG-HO JUNG,**
425 Massachusetts Ave. NW
PH 216
Washington, DC 20001,
individually, and on behalf of all others similarly situated,

*Plaintiff*,

v.

**MCCORMICK & CO., INC.**,
18 Loveton Circle
Sparks, MD 21152

*Defendant.*

Case No.: 15-cv-1448

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiff, Seung-Ho Jung ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through undersigned counsel, brings this Class Action Complaint against Defendant, McCormick & Co., Inc., ("McCormick" or "Defendant"), and alleges the following:

**NATURE OF THE CASE**

1. McCormick manufactures, packages, advertises, distributes, and sells McCormick® Pure Ground Black Pepper.

2. Over the past several years, Plaintiff has become accustomed to purchasing Defendant's products because of their consistent and uniform size and the consistent and uniform amount of ground black pepper contained in the tins. However, Plaintiff recently learned that Defendant has been providing 25% less ground black pepper in Defendant's products since the beginning of 2015 due to unlawful, unjustified slack-filling.

3. Upon information and belief, for decades, McCormick has sold its ground black pepper in opaque metal tins, which had been substantially filled to capacity and which had become the industry standard.

4. Upon information and belief, at the beginning of 2015, McCormick began filling at least three of its standard tin sizes with 25% less ground black pepper, leaving the rest of the space in the tin empty. This process is called slack-filling, and it is unlawful.

5. Specifically, McCormick's small sized tin ("Small Tin") measuring approximately 3 1/16" tall, 1 5/16" deep, and 2 5/16" wide, currently holds 1.5 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Small Tin to capacity with 2 ounces of ground black pepper. Although the amount of ground pepper has been reduced by 25% since early 2015, the actual size of the Small Tin has, at all relevant times, remained the same.

6. Similarly, McCormick's medium sized tin ("Medium Tin"), measuring approximately 3 10/16" tall, 1 9/16" deep, and 2 13/16" wide, currently holds 3 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Medium Tin to capacity with 4 ounces of ground black pepper. Although the amount of ground pepper has been reduced by 25% since early 2015, the actual size of the Medium Tin has, at all relevant times, remained the same.

7. Finally, McCormick's larger sized tin ("Large Tin"), measuring approximately 4 10/16" tall, 2 4/16" deep, and 3 5/16" wide, currently holds 6 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Large Tin to capacity with 8 ounces of ground black pepper. Again, although the amount of ground pepper has been reduced

by 25% since early 2015, the actual size of the Large Tin has, at all relevant times, remained the same.

8. Ground black pepper sold in the Small Tin (holding 2 ounces), Medium Tin (holding 4 ounces), and Large Tin (holding 8 ounces) prior to 2015 is collectively referred to as the "Full Products." Ground black pepper sold in the same size Small Tin (now holding 1.5 ounces), Medium Tin (now holding 3 ounces), and Large Tin (now holding 6 ounces) sold after early 2015 is referred to collectively as the "Reduced Products" or individually as a "Reduced Product."

9. Filling the Reduced Products with 25% less ground black pepper without changing the size of the respective tins is unlawful, misleading and likely to deceive reasonable consumers.

10. Furthermore, there is no legal justification for Defendant filling the Reduced Products with 25% less ground black pepper than it has filled, for decades, the Full Products.

11. Plaintiff brings this action on behalf of himself and a nationwide class of consumers, as well as a sub-class of Washington D.C. consumers, to rectify the injuries caused by McCormick's unlawful practices, and to enjoin McCormick's ongoing deceptive representations concerning the Reduced Products.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over the subject-matter presented by this Class Action Complaint because it is a class action arising under 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and where the

amount in controversy exceeds the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2). Plaintiff is a citizen of Washington D.C. and Defendant is a publicly traded Maryland corporation with its principal place of business located in Sparks, Maryland; therefore, diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(2)(A).

13. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased both the Full Products and the Reduced Products in this judicial district. Specifically, Plaintiff purchased the Full Products and Reduced Products in Washington D.C.

**PARTIES**

14. Plaintiff, Seung-Ho Jung, is, and at all times relevant was, an individual residing in and a citizen of the District of Columbia. Plaintiff has purchased the Full Products for personal use on multiple occasions for the past several years.

15. Defendant is a Maryland corporation, with its principal place of business located in Sparks, Maryland. Defendant promoted and marketed the Full Products and the Reduced Products at issue in this jurisdiction and in this venue.

16. The unlawful packaging of the Reduced Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents.

17. At all relevant times, Defendant and its subsidiaries, affiliates, and other related entities, as well as its respective employees, were the agents, servants, and employees of Defendant, and at all relevant times, each was acting within the purpose and scope of that agency

and employment. Plaintiff further alleges, on information and belief, that at all relevant times, the distributors and retailers who delivered and sold the Reduced Products, as well as their respective employees, were also Defendant's agents, servants, and employees, and at all times relevant, each was acting within the purpose and scope of that agency and employment.

18. Additionally, Plaintiff alleges that, in committing the wrongful acts alleged, Defendant, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Reduced Products.

19. Whenever reference in this Complaint is made to any act by Defendant or its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified, and/or directed such act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

**FACTS**

20. Defendant currently sells ground black pepper in tins that are the same size as tins previously sold by Defendant for years, but now those same tins contain 25% less ground black pepper. Defendant's actions have deceived reasonable consumers, such as Plaintiff and the members of the putative Class, because reasonable consumers expect that the tins will contain the same amount of ground pepper as they had in years past; and expect that the tins will contain the amount of pepper that would fill the tins.

21. When Plaintiff purchased the Reduced Product in the Spring of 2015, he thought it contained the same amount of pepper as had been in the Full Products because the tin was the same size it had been in the past.

22. On information and belief, retailers and consumers are misled into believing that they are buying a larger volume of ground black pepper than is contained in the McCormick Reduced Products.

23. Plaintiff has become accustomed to purchasing the Full Products because of their consistent and uniform size and the consistent and uniform amount of ground black pepper contained in the tins. However, in the Spring of 2015, Plaintiff purchased the Medium Tin, Reduced Product for personal use, believing that it contained 4 ounces of ground black pepper, as all Medium Tin Full Products had contained 4 ounces of ground black pepper that Plaintiff had purchased in the past. Subsequent to purchasing the Reduced Product, however, Plaintiff learned that Defendant had provided 25% less ground black pepper in it because of unlawful, unjustified, slack-filling. Plaintiff would not have purchased the Reduced Product had he known that it contained 25% less ground black pepper than the Full Products he purchased previously, or Plaintiff would not have paid what he did for the Reduced Product.

24. On information and belief, in many or most instances, McCormick intentionally maintained the price of its standard sized tins, notwithstanding the significant reduction in the amount of ground black pepper contained in the traditional tin, which had the effect of further adding to the perception that nothing had changed. It appears that millions, if not tens of millions, of these McCormick Reduced Products have replaced Full Products in virtually every retailer throughout the United States that sells McCormick products.

25. On information and belief, McCormick intentionally kept the tins the same size, with the same price, notwithstanding the 25% decrease in ground black pepper fill, in a manner that misleads retailers and consumers. Although the tins note in small print the actual weight of ground black pepper contained in the slack-filled tins, consumers are not otherwise told of the

decrease in ground black pepper from the traditional fill or that the tin contains a significant void. Consumers rely upon the traditional size of the opaque tins as the basis of making a purchasing decision, and believe the tins are effectively full, as they have been for decades.

26. Regardless, the Reduced Products are unlawful under federal law.

**FEDERAL LAW PROHIBITS SLACK-FILLING**

27. Food manufacturers are required to comply with state and federal statutes and regulations pertaining to food containers, including the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 343, and its regulations regarding filling, as set forth in 21 C.F.R. 100.100.

28. Specifically, section 403 (d) of the FDCA, 21 U.S.C. § 343(d) states that a food container is misbranded if the "container is so made, formed, or filled as to be misleading."

29. Section 403(d) of the FDCA is further explained by 21 C.F.R. § 100.100, which prohibits nonfunctional "slack-filling."

30. Specifically, 21 C.F.R. § 100.100 states:

> In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.
>
> (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:
>
> (1) Protection of the contents of the package;
>
> (2) The requirements of the machines used for enclosing the contents in such package;
>
> (3) Unavoidable product settling during shipping and handling;

> (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;
>
> (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or
>
> (6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

31. Under both federal and Washington D.C. law, McCormick lacks any lawful justification for reducing the amount of pepper and leaving empty space in the Reduced Products.

32. Each of the fifty states has statutes that prohibit deceptive business practices directed at consumers. Defendant's actions violate each of these statutes.

**DEFENDANT'S MISREPRESENTATIONS ARE MATERIAL TO CONSUMERS**

33. Upon information and belief, for decades, and up until early 2015, Defendant substantially filled its Small Tins, Medium Tins, and Large Tins to capacity (*i.e.*, the Full Products).

34. That changed in early 2015, when Defendant began filling its Small Tins, Medium Tins, and Large Tins with 75% of the ground black pepper it had previously–for decades–included in those containers (*i.e.,* the Reduced Products).

35. A reasonable consumer would not expect the Reduced Products to contain 25% less ground black pepper than the Full Products because the Reduced Products and the Full Products have the same size containers, and both sets of containers are opaque.

36. A reasonable consumer would expect the Reduced Products to contain the same amount of ground black pepper as the Full Products and there is no legal justification for the Products not containing such amount.

37. Whether the Reduced Products actually contain the same amount of pepper as the Full Products is important to Plaintiff and other reasonable consumers.

38. The packaging for the Reduced Products was designed to encourage consumers to purchase the Reduced Products with the belief that the Reduced Products contain the same amount of ground black pepper as the Full Products.

39. Reasonable consumers are likely to be deceived by the Reduced Products because, although the Reduced Products are the same size as the Full Products, the Reduced Products actually contain 25% less ground pepper than the Full Products, but the consumer cannot see into either the Full Products or the Reduced Products because both sets of containers are opaque.

40. As a result, Plaintiff purchased the Reduced Products instead of other similar products that are not unlawfully slack-filled.

41. Plaintiff paid a price premium for the Reduced Products over other similar products that are not unlawfully slack-filled.

42. Plaintiff and members of the Class were misled by Defendant's representations that the Reduced Products contain the same amount of black pepper as the Full Products because

for decades Defendant had substantially filled the Full Products to capacity, creating the industry standard.

43. Plaintiff and members of the Class would not have purchased the Reduced Products if they had known the Reduced Products were unlawfully slack-filled, or would not have paid what they did for the Reduced Products.

44. Side-by-side, McCormick Small Tins and Medium Tins, respectively, appear to be identical in size to the comparable tins made by other manufacturers, leading consumers to the reasonable assumption (and accurate until McCormick began slack-filling its full tins) that they contain the same quantity of pepper. In fact, the McCormick Reduced Products contain less ground pepper than the comparable tins made by other manufacturers.

**PLAINTIFF'S PURCHASE OF DEFENDANT'S PRODUCTS**

45. Plaintiff purchased the Full Products on multiple occasions over the past several years, and Plaintiff specifically purchased Reduced Products during the Class Period. Plaintiff purchased the Reduced Product from a Safeway grocery store located in Washington D.C.

46. In purchasing the Reduced Products, Plaintiff saw and perceived the packaging for them, and was misled into believing that the Reduced Products, which are in the same sized tin as the Full Products, contained the same amount of ground black pepper as the Full Products that he had previously purchased.

47. Plaintiff and members of the putative Class would not have purchased the Reduced Products, or would have paid less for them if they had known that the Reduced Products contain 25% less ground black pepper than the Full Products.

48. Consequently, the Reduced Products are worth less than what Plaintiff paid for and/or Plaintiff did not receive what he reasonably believed he was buying.

49. McCormick was able to command a price for the Reduced Products higher than a fair market price by deceiving consumers into believing the Reduced Products contained 25% more ground black pepper than they actually do or did.

50. Plaintiff and the Class have lost money or property as a result of Defendant's unlawful, unjustified slack-filling the Reduced Products.

## CLASS ALLEGATIONS

51. Plaintiff incorporates by reference the allegations set forth above in this Complaint.

52. Plaintiff brings this class action individually and on behalf of all others similarly situated.

53. For the purposes of Count I (violation of the CPPA) below, Plaintiff seeks to represent a class defined as:

> All persons in the District of Columbia who purchased any of McCormick's Reduced Products for personal use.

This class is known as the "Washington D.C. Sub-Class."

54. For the purposes of Count II (unjust enrichment) below, Plaintiff seeks to represent, a class defined as:

> All persons in the United States who purchased any of McCormick's Reduced Products for personal use.

This class is known as the "Nationwide Class."

55. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal

representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Classes are any judge, justice, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff. Plaintiff reserves the right to amend either class definition if further information and discovery indicates that the class definitions should be narrowed, expanded, or otherwise modified.

56. This action is maintainable as a class action under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

57. Numerosity: The Class comprises many thousands of persons throughout the nation. The classes are so numerous that joinder of all members is impracticable, and the disposition of their claims in a single Class Action will benefit the parties and the court system.

58. Commonality: The questions of law and fact common to the Class have the capacity to generate common answers that will drive resolution of the action. Common questions of law and fact include, but are not limited to, the following:

a. Whether Defendant's practices related to the amount of pepper in the Reduced Products were unfair, deceptive, and/or unlawful in any respect, thereby violating 21 C.F.R. § 100.100, the CPPA, and the corresponding statutes of each of the other states as referenced above;

b. Whether Defendant's practices and representations related to the sales of the Reduced Products were unfair, deceptive, and/or unlawful in any respect, thereby violating 21 C.F.R. § 100.100, the CPPA, and the corresponding statutes of each of the other states as referenced above;

c. Whether Defendant's practices and representations related to the filling, marketing, and sales of the Reduced Products constituted misleading concealment;

d. Whether Defendant violated 21 C.F.R. § 100.100, *et seq*., with its practices and representations related to the sales of the Reduced Products; and

e. Whether Defendant's conduct, as set forth above, injured consumers, and if so, the extent of the injury.

59. Typicality: Plaintiff's claims, and Defendant's defenses, are typical of the claims of the Class, because the Reduced Products made by Defendant are consistent and uniform in size and every member of the Class was necessarily exposed to the same in purchasing the Reduced Products that all contained 25% less ground black pepper than the Full Products contained, even though the Full Products are the same size as the Reduced Products. Additionally, all Members of the Class have the same or similar injury (loss of purchase price) based on Defendant's false and misleading marketing and advertising.

60. Adequacy: Plaintiff does not have any conflicts with any other Members of the Class, and will fairly and adequately represent and protect the interests of the Members of the Plaintiff Class and any subclass. Plaintiff has retained counsel competent and experienced in consumer protection and class action litigation, trials and appeals.

61. Predominance: As set forth in detail, common issues of fact and law predominate because all of Plaintiff's claims are based on the uniform and consistent, unlawful, unjustified slack-filling, which all Class Members necessarily were exposed to in purchasing the Reduced Products, namely the packaging of the Reduced Products being the same size as the Full

Products, even though the Reduced Products contain 25% less ground black pepper than the Full Products.

62. Superiority: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of the individual litigation would make it impracticable or impossible for the Class Members to prosecute their claims individually. Absent a class action, Defendant likely will retain the benefits of its wrongdoing. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for these wrongs. Absent a representative action, the Class Members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform court judgment. Thus, the benefits of proceeding as a class action outweigh the difficulties.

## COUNT I – VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT ("CPPA") (D.C. CODE §§ 28-3901, *et seq.*)

63. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

64. Plaintiff brings this claim individually and on behalf of the Washington D.C. Sub-Class against Defendant.

65. The Consumer Protection Procedures Act, D.C. Code § 28-3904, provides, in part, as follows:

> It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
>
> (a) Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> . . .
>
> (e) Misrepresent as to a material fact which has a tendency to mislead;
>
> . . .
>
> (f) Fail to state a material fact if such failure tends to mislead;
>
> (f-1) [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead[.]

66. The Consumer Protection Procedures Act further provides for a civil action to recover damages in D.C. Code § 28-3905(k)(1)(A), as follows:

> A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District.

67. This claim is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendant. Defendant's business practices in its advertising, marketing, packaging, labeling and sales of its products is a deceptive act or practice and constitutes multiple, separate violations of D.C. Code § 28-3904 because Defendant's Reduced Products, like its Full Products are opaque, standard sized containers that consumers cannot see into, and Defendant exploited this fact by including 25% less ground pepper than it had included in the Full Products for decades, which use the same size containers as the Reduced Products.

68. Because the tins are opaque, Plaintiff was unable to tell that they are now at least 25% empty.

69. Defendant's unjustified slack-filling of the Reduced Products is a misrepresentation of a material fact and constitutes an unfair trade practice within the meaning of the CPPA.

70. Defendant's concealment, suppression, misrepresentations and/or omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Washington D.C. Sub-Class regarding Defendant's products.

71. In violation of the CPPA, Defendant employed misrepresentation, and/or the knowing concealment, suppression, or omission of material facts in its sale and advertisement of Defendant's products in the District of Columbia.

72. Defendant engaged in the concealment, suppression, misrepresentations and/or omission of the aforementioned material facts with the intent to mislead others, including Plaintiff, the Washington D.C. Sub-Class, and/or the general public, about such material facts and purchase of Defendant's products.

73. As a result of their purchase of Defendant's products, Plaintiffs and the members of the Washington D.C. Sub-Class sustained ascertainable loss and damage in that, among other things, Defendant reduced the amount of ground black pepper contained in the Reduced Products by 25% relative to the Full Products, even though the Full Products and the Reduced Products utilize the same size container and are both opaque.

74. Plaintiff and the members of the Washington D.C. Sub-Class are entitled to recover their actual and treble damages, attorneys' fees, punitive damages, and injunctive or other equitable relief, pursuant to Washington D.C. law, including D.C. Code § 28-3905(k)(2)(A-F).

75. Furthermore, Defendant's unlawful conduct set forth in this Complaint was and is outrageous because of Defendant's egregious wrongdoing while acting with evil motive, malice, and willful disregard of the rights of others and for the rights of Plaintiff and members of the Washington D.C. Sub-Class and warrants an award of punitive damages to deter Defendant, and others in similar circumstances, from committing such actions in the future.

76. Defendant's business practices as alleged are misleading because they are likely to deceive customers into believing that the Reduced Products provide more ground black pepper than they actually do.

77. There is no lawful justification under either federal or Washington D.C. law for Defendant's slack-filling the Reduced Products.

78. Plaintiff and the putative Class Members were misled into purchasing the Reduced Products by Defendant's unfair and misleading conduct.

79. The Reduced Products are identical in size to their corresponding Full Products and yet the Reduced Products contain 25% less ground black pepper than the Full Products. These representations are uniform and material for each Reduced Product.

**COUNT II – UNJUST ENRICHMENT**

80. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

81. Plaintiff and the Nationwide Class members conferred upon Defendant benefits that were non-gratuitous and constitute unjust takings.

82. Defendant accepted or retained the benefits conferred by Plaintiff and the Nationwide Class despite Defendant's deceptive advertising, material misrepresentations, and omissions of material fact with regard to the quantity of pepper contained in its products.

83. Retaining the benefits conferred upon Defendant by Plaintiff and the Nationwide Class under these circumstances makes Defendant's retention of the benefits unjust and inequitable.

84. As a result of the foregoing, Plaintiff and the Nationwide Class have suffered damages, as set forth more fully above.

85. Because Defendant's retention of the benefits conferred by Plaintiff and the Nationwide Class is unjust and inequitable, Defendant must pay restitution in a manner established by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Seung-Ho Jung, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth, as follows:

1. For an order certifying that the action may be maintained as a class action, and appointing Plaintiff and his attorneys to represent the Washington D.C. Sub-Class and the Nationwide Class;
2. For an order enjoining Defendant from engaging in the practices set forth;
3. For an order compelling Defendant to conduct a corrective advertising campaign;
4. For an order requiring Defendant to disgorge or return all money, revenue, and profits obtained by means of any wrongful act or practice alleged;
5. For an order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unfair business act or practice, untrue, or misleading advertising, or unjust enrichment, or violation of the CPPA;
6. For an order awarding Plaintiff and the Classes punitive damages;

7. For an order awarding Plaintiff and the Washington D.C. Sub-Class treble damages;

8. For an award of attorney's fees, costs and expenses; and

9. Any other and further relief as the Court deems necessary, just, or proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Dated September 4, 2015.

Respectfully Submitted,

KAMBERLAW LLP

/s/ Deborah Kravitz_____
Deborah Kravitz (DC Bar No. 440837)
401 Center St., Suite 111
Healdsburg, CA
P. (707) 820-4247
F. (212) 202-6364
dkravitz@kamberlaw.com

Attorneys for Plaintiff and the Putative Class